UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
RYAN WALLACE,

                Plaintiff,

       -against-

SEACREST LINEN, UNITE, AFL CIO, CLC
ANTHONY PRATT/STANLEY OLAN,

                Defendants.
------------------------------------------------------------x

MEMORANDUM DECISION
AND ORDER
O4 CV 6035 (GBD)

GEORGE B. DANIELS, District Judge:

*Pro se* plaintiff Ryan Wallace brings this action pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq*, against Seacrest Linen and its owners, Anthony Pratt and Stanley Olan ("employer defendants") and UNITE[1], a labor union and a member of the American Federation of Labor–Congress of Industrial Organizations Central Labor Council (AFL-CIO, CLC) ("union defendant"). Construed liberally, plaintiff's claims also suggest an action against union defendant for breach of the duty of fair representation.

## PROCEDURAL HISTORY

Plaintiff filed his original complaint alleging racial discrimination. The defendants filed answers to that complaint. Thereafter, the court's *Pro Se* Office received an "amended complaint" in which plaintiff recounted substantially the same events as in his original complaint but changed the basis of his claim, abandoning Title VII and instead claiming violations of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621-634, and the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12112-12117.

---

[1] Formerly the Union of Needletrades, Industrial and Textile Employees. UNITE merged in July, 2004, with HERE, the former Hotel Employees and Restaurant Employees International Union. The organization is now named UNITE HERE. UNITE HERE is affiliated with plaintiff's local collective bargaining unit, Laundry, Dry-Cleaning and Allied Workers Joint Board.

Federal Rules allow a party to amend its pleading "once as a matter of course at any time before a responsive pleading is served." Fed. R. Civ. P. 15(a). Afterward, a party may amend its pleading "only by leave of court or by written consent of the adverse party." Id. In making his submission after the filing of responsive pleadings, plaintiff sought neither consent from defendants nor leave from the court. Because he is proceeding *pro se*, however, this court will regard his submission as a proper motion to amend. This is consistent with the federal courts' longstanding practice of holding *pro se* complaints to less stringent standards than formal pleadings drafted by lawyers. See, e.g., Haines v. Kerner, 404 U.S. 519, 520 (1972) (*per curiam*). Federal Rules provide that leave to amend "shall be freely given when justice so requires" Fed. R. Civ. P. 15(a), but a district court may deny leave where it is apparent that an amendment will be futile. Forman v. Davis, 371 U.S. 178, 182 (1962); Jin v. Metropolitan Life Ins. Co., 310 F.3d 84, 101 (2d Cir. 2002). Such is the case here.

The ADA prohibits an employer or labor organization from discriminating against a qualified individual with regard to advancement, discharge and other terms, conditions and privileges of employment because of that person's disability. 42 U.S.C. § 12111-12. The ADEA prohibits an employer or labor organization from discriminating against any individual because of that individual's age. 29 U.S.C. § 623. As a precondition to filing a private civil action, a plaintiff must file a charge with the Equal Employment Opportunities Commission (EEOC) under the provisions of both the ADA, 42 U.S.C. § 12117, 42 U.S.C. §§ 2000e-4, 5; Cooney v. Consol. Edison, 220 F. Supp. 2d 241 (S.D.N.Y. 2002), and the ADEA, 29 U.S.C. § 626(d); Malarkey v. Texaco, Inc., 983 F.2d 1204, 1208 (2d. Cir. 1993); Hawana v. City of N.Y., 230 F. Supp. 2d 518, 525 (S.D.N.Y. 2002). This requirement allows the EEOC to investigate and mediate discrimination claims, seeking remedial action and conciliation between parties. See

Stewart v. United States Immigration & Naturalization Serv., 762 F.2d 193, 198 (2d Cir. 1985). Judicial relief generally cannot be sought for claims that are not listed in the charge brought to the EEOC.

The Second Circuit has recognized an exception where claims are "sufficiently related to the allegations in the charge that it would be unfair to civil rights plaintiffs to bar such claims in a civil action." Butts v. City of N.Y. Dep't of Hous., 990 F.2d 1397, 1402 (2d Cir. 1993) (superceded on other grounds). This condition is met when the conduct in the civil complaint would fall within the scope of the investigation that would reasonably grow out of the EEOC charge of discrimination. Id.; see also Stewart, 762 F.2d at 198; Chojar v. Levitt, 773 F. Supp. 645, 651 (S.D.N.Y. 1991). Plaintiff's EEOC charge alleged discrimination based on race. His amended complaint alleged discrimination based on age and disability. These allegations are not reasonably related. See Sank v. City Univ. of N.Y., No. 94 Civ. 02531995, 1995 U.S. Dist. LEXIS 7021 (S.D.N.Y. May 24, 1995) (finding the plaintiff's civil claims of disability and religious discrimination were not reasonably related to prior EEOC charges of race and sex discrimination); see also Dennis v. Pan Am. World Airways, 746 F. Supp. 288, 291 (E.D.N.Y. 1990) (finding age discrimination claim not reasonably related to race discrimination).

This court makes its determination mindful that, where a *pro se* plaintiff brings charges to the EEOC, the proper focus of the court's inquiry is not on the formal titles of the charges but on the factual allegations that support them. Deravin v. Kerik, 335 F.3d 195, 201 (2d Cir. 2003); see also Alonzo v. Chase Manhattan Bank, N.A., 25 F. Supp. 2d 455, 458 (S.D.N.Y. 1998) ("[I]t is the substance of the charge and not its label that controls."). Here, plaintiff has not shown any record of factual allegations brought before the EEOC that would have prompted an investigation into age or disability discrimination or prompted attempts at mediation, remedial action or

conciliation relating to those issues at his workplace. Since plaintiff has failed to exhaust his administrative remedies with respect to the ADA and ADEA, any claims under those statutes are procedurally barred, and it would be futile for him to amend his complaint to include them. Therefore, plaintiff's motion to amend his complaint is denied.

This court will consider only plaintiff's original complaint, alleging racial discrimination and a breach of the union's duty of fair representation. Employer and union defendants move for summary judgment and have so notified plaintiff as to these claims, as required by Local Civil Rule 56.2 (prescribing specific language for explaining to *pro se* non-movants the meaning of summary judgment and the potential consequences of failing to respond). Plaintiff has not filed an opposition to summary judgment. Union and employer defendants' motions for summary judgment are granted.

## STATEMENT OF FACTS

Plaintiff, an African American man, was hired as a "helper" by Seacrest Linen in 1999. Helpers assist Seacrest truck drivers in picking up and delivering linens for customers. At times during his employment, plaintiff also functioned as a driver. (Pratt Aff. ¶ 3, July 26, 2005). On one of those occasions, in January 2001, plaintiff alleges that he received a ticket because the company truck that he was driving did not have an insurance card. (Compl. narrative 1). Plaintiff claims that he turned the ticket in to the office manager but that the company failed to pay the ticket, resulting in the suspension of plaintiff's driver's license and in his arrest in January 2002, when he claims that he spent a day in jail. (Compl. narrative 2). He alleges that his employer then demoted him to helper. (Compl. narrative 2). At unspecified times, plaintiff

alleges that he was required, under threat of discharge, to drive a truck requiring a Class-A driver's license, which he did not possess. (Compl. narrative 1).

On August 6, 2002, plaintiff was discharged for failing to come to work without calling in. Plaintiff claims that he had undergone surgery and had been on sick leave. (Compl. narrative 2). Plaintiff's union represented him in a grievance proceeding, claiming that his discharge was without just cause and was a violation of the FMLA because his employer did not advise him of his rights as required under that law. The grievance was submitted to arbitration on February 11, 2003. In an award letter dated February 18, 2003, the arbitrator found that plaintiff frequently was absent or late and frequently failed to call in. The arbitrator further found that plaintiff failed to comply with the company requirement that he provide a doctor's note to document an illness-related absence of two or more days' duration. Therefore the arbitrator found just cause for plaintiff's termination. Seacrest Linen v. Laundry, Dry Cleaning & Allied Workers Joint Bd., UNITE, (2003) (Gross, Arb.) ("Seacrest Linen"). However, the arbitrator also found that employer defendants had condoned plaintiff's behavior by failing to take any disciplinary steps despite repeatedly warning that they would take such steps. The arbitrator found termination too harsh a remedy for plaintiff's repetition of the same conduct. The arbitrator converted plaintiff's termination to suspension without back pay and concluded with a "final warning that a further similar infraction can lead to immediate discipline including discharge." Id.

Under the terms of the arbitration, plaintiff returned to work on Monday, February 24, 2003, and alleges that he completed his former route without incident. He claims, however, that he was warned that day by the union shop steward that his supervisors planned to pair him on the following day with a driver "nobody gets along with," against whom he had complained and filed grievances in the past. Plaintiff claims his supervisors denied his request to be assigned to a

5

different driver. (Compl. narrative 2-3). The next day, plaintiff and the driver were on their route when plaintiff alleges that the driver yelled at him and ordered him around (Compl. narrative 4). This led to an argument between them, which plaintiff thought would become a physical confrontation. (Wallace Dep. 11:12-13, April 28, 2005) ("Wallace Dep."). Plaintiff alleges that he called his supervisor to report the argument and "[l]et him know what my action [i.e. leaving the route and going to the union] was going to be. He didn't tell me I was going to be terminated or I cannot work the next day or anything like that. Just said okay." (Wallace Dep. 14:15-17). For the following three days, plaintiff claims that he punched in at work but was told that he could not work until he heard from the union. (Compl. narrative 4). Employer defendants claim that, during this period, plaintiff was on a three-day suspension beginning on February 26, 2003 because on February 25th he "left the route in Manhattan without permission from the company and in addition insulted and threatened the driver." (Employee Warning Notice). Following this suspension, employer defendant alleges that plaintiff again walked off the job, prompting his termination. (Pratt Aff. ¶ 6).

Plaintiff took separate actions against the union and the company. On March 25, 2003, he filed a charge with the National Labor Relations Board (NLRB) against Amalgamated Services & Allied Industries Joint Board, UNITE, AFL-CIO. He alleged that for the previous six months, the union had failed and refused to represent him properly regarding his grievances against employer defendant for reasons that were "arbitrary, capricious and invidious." On May 13, 2003, the NLRB Region 29 office in Brooklyn dismissed the charge. The NLRB Office of the General Counsel in Washington, D.C., denied plaintiff's appeal on August 25, 2003.

Plaintiff also took action against the company, filing a grievance against employer defendants with his union on April 5, 2003. The union informed plaintiff on April 21, 2003, that

it found the charges without merit and would not pursue them. On October 6, 2003, plaintiff filed a discrimination charge against "Central Laundry Service Corp. d/b/a/ Seacrest," one of the employer defendants, with the New York State Division of Human Rights (NYSDHR). He claimed that his termination had been based on his race and on his past arrest for driving with a suspended license. In its report on March 8, 2004, the NYSDHR found no probable cause to believe that Seacrest engaged in unlawful discriminatory conduct. Its conclusion was adopted on April 30, 2004, by the EEOC, which issued a right-to-sue letter. Plaintiff brought the instant action on August 4, 2004. All defendants now move for summary judgment. Plaintiff has not filed an opposition.

## STANDARD OF REVIEW

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). However, the non-moving party is responsible for providing "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Rather than resolve disputed matters it may find in the record, the court's role is to determine the threshold question of whether any such dispute over a material fact exists. See Anderson, 477 U.S. at 249; see also Gibson v. Am. Broad. Cos., 892 F.2d 1128, 1132 (2d Cir. 1989). When reviewing a motion for summary judgment, the court views the evidence in the light most favorable to the non-moving

7

party and draws all reasonable inferences in favor of that party. See Schneider v. Feinberg, 345 F.3d 135, 144 (2d Cir. 2003). The court construes a *pro se* litigant's pleadings liberally, reading them to raise the strongest arguments they suggest, see Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994), particularly when, as here, the complaint alleges civil rights violations. See Weixel v. Bd. of Educ., 287 F.3d 138, 146 (2d Cir. 2002).

Where a non-moving party fails to oppose a motion for summary judgment, the motion is not granted automatically, but is granted only "if appropriate." Fed. R. Civ. P. 56(e). This Circuit has been clear that "[e]ven when a motion for summary judgment is unopposed, the district court is not relieved of its duty to decide whether the movant is entitled to judgment as a matter of law." Vt. Teddy Bear Co. v. 1-800 BEARGRAM Co., 373 F.3d 241, 242 (2d Cir. 2004). This requires the court to examine the moving party's submission "to determine if it has met its burden of demonstrating that no material issue of fact remains for trial." Amaker v. Foley, 274 F.3d 677, 681 (2d Cir. 2001). Local Civil Rules in this District provide that if the opposing party fails to controvert a fact set forth by the moving party, that fact will be deemed admitted. See Local Rule 56.1(a). However, the court's truth-finding function also requires that the court must be satisfied that the moving party's factual assertions are supported by evidence in the record. Vt. Teddy Bear Co., 373 F.3d at 244 (citing Giannullo v. City of New York, 322 F.3d 139, 140 (2d Cir. 2003)).

### TITLE VII CLAIM

**A. Employer defendants**

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*, prohibits an employer from discriminating against "any individual with respect to his compensation, terms, conditions,

8

or privileges of employment, because of the individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). As a precondition to filing a private civil action, a plaintiff must file a charge with the EEOC. 42 U.S.C. § 2000e-5; McDonnell Douglas Corp., 411 U.S. at 798 (1973). Before bringing his claim to this court, plaintiff properly pursued his complaint with the NYSDHR and EEOC and received a right-to-sue letter, thereby exhausting his administrative remedies as required.

Under Title VII, discrimination claims are governed by the burden-shifting framework established in McDonnell Douglas Corp. v. Green: (1) the plaintiff bears the initial burden of establishing a prima facie case; (2) the defendant then bears the burden of articulating a legitimate reason for the adverse employment action in question; after which (3) the plaintiff must show the employer's proffered reason is mere pretext and that discrimination or retaliation was the true motivation for the action. 411 U.S. 792, 802-04 (1973). In order to meet the burden of production required for a prima facie case of discrimination, a plaintiff must show that "(1) he is a member of a protected class; (2) he is competent to perform the job or is performing his duties satisfactorily; (3) he suffered an adverse employment decision or action; and (4) the decision or action occurred under circumstances giving rise to an inference of discrimination based on his membership in the protected class." Dawson v. Bumble & Bumble, 398 F.3d 211, 216 (2d Cir. 2005). Plaintiff fails to satisfy this burden.

The circumstances surrounding plaintiff's termination do not give rise to an inference of discrimination. A plaintiff may show such an inference by producing evidence that similarly situated employees outside of his protected class were treated more favorably. See Shumway v. United Parcel Serv., Inc., 118 F.3d 60, 64 (2d Cir. 1997). The burden on the plaintiff at the summary judgment stage is a minimal one. See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502,

506 (1993); Fisher v. Vassar Coll., 114 F.3d 1332, 1335 (2d Cir. 1997). Plaintiff fails to meet that burden. His complaint alleges that his employer discriminated against him in various actions, including terminating his employment, failing to promote him, subjecting him to unequal terms and conditions of employment, harassing him and retaliating against him. He points to race as a factor in only one instance, however: his allegation that a white employee was not disciplined despite having had three absences from work. (Compl. narrative 6 ¶ 4). Whether a plaintiff and another person are similarly situated is usually a question of fact for a jury. Graham v. L.I.R.R., 230 F. 3d 34, 39 (2d Cir. 2000). However, plaintiff here has not offered evidence for a reasonable jury to reach that conclusion. To do so, he would need to show that he and the white employee were similarly situated in all material respects. Shumway, 118 F.3d at 64. That would require that they were "subject to the same performance evaluation and discipline standards" and also that they "engaged in comparable conduct." See Graham, 230 F.3d at 40. Neither condition is satisfied here. First, plaintiff was a helper and a driver while, according to his complaint, the white employee was a manager. (Compl. narrative 6 ¶ 4). Therefore the record does not suggest that plaintiff and the white employee were subject to the same workplace standards. See Roa v. Mineta, 51 Fed. Appx. 896, 899-900 (2d Cir. 2002) (upholding summary judgment where two employees reporting to the same supervisor were found not similarly situated because their duties and responsibilities were materially different); see also Buchanan v. Conn. Transit, Inc., No. 3:98 cv 1145, 2000 WL 435546 (D. Conn 2000) (granting summary judgment because a supervisor and his subordinate were not similarly situated employees); Levinnes v. Bannon, No. 3:99 cv 01647, 2001 WL 1580278 (D. Conn. 2001) (dismissing complaint because plaintiff was not similarly situated with other employees who worked in

different departments, where there was no allegation that other employees had job duties or disciplinary records similar to those of the plaintiff).

Moreover, plaintiff and the white employee had not engaged in comparable conduct. According to the complaint, the white employee was absent three times without calling in. Plaintiff's absences were more numerous. His conduct was characterized by an arbitrator as a "persistent flouting of reasonable attendance and attendance-related requirements"and was so extreme that the arbitrator gave him just one more chance to continue in his job. Seacrest Linen. Such a finding by an arbitrator is highly probative of a lack of a discriminatory motive by the employer. See Collins v. N.Y. City Transit Auth., 305 F.3d 113, 119 (2d Cir. 2002) (upholding summary judgment and explaining that, while a negative arbitration decision does not preclude a Title VII action, it does attenuate an employee's discrimination claim). Plaintiff has not shown that he was treated differently from any similarly situated employee not in his racial group. Thus he has not shown any facts supporting an inference of racial discrimination. His attempt to abandon that claim in his amended complaint in substitution of a disability and age discrimination claim is consistent with its lack of evidentiary support.

Plaintiff's work record also prevents him from satisfying another element of his prima facie burden. He is unable to show that he was performing his duties satisfactorily. Employer defendants document plaintiff's unreliable work pattern in the weeks following his reinstatement. (Employee Warning Notice). Taken alone, plaintiff's conduct would undermine his case. Here, it also supports the non-discriminatory reason for termination proffered by employer-defendant: his unsatisfactory performance. (Employee Warning Notice). Plaintiff's discrimination claim fails whether based upon race, disability or age. Employer defendant is entitled to summary judgment.

**B. Union defendant**

Title VII also prohibits a labor organization from classifying its members in any way that would adversely affect their status as employees because of their race, color, religion, sex or national origin. 42 U.S.C. § 2000e-2(c). As above, a precondition to filing a private civil action, is that a plaintiff must file a charge with the EEOC. 42 U.S.C. § 2000e-5; McDonnell Douglas Corp., 411 U.S. at 798 (1973). When plaintiff filed his administrative charge with the NYSDHR and EEOC, he named only Central Laundry Service Corp. d/b/a Seacrest, one of the employer defendants. A claim may proceed against a party unnamed in an administrative charge where the unnamed defendant shares a clear identity of interest with the party named in the charge. See Johnson v. Palma, 931 F.2d 203, 209 (2d Cir. 1991). To determine whether an identity of interest exists, the court considers four factors:

> 1) whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint; 2) whether, under the circumstances, the interests of a named [party] are so similar as the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings; 3) whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party; 4) whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party.
>
> Johnson, 931 F.2d at 209.

Plaintiff fails to meet any of the four factors required for an "identity of interest" exception to the requirement that he exhaust his administrative remedies against union defendant. First, plaintiff knew the role of the unnamed party, union defendant, to be different from that of employer defendants since his union had represented him in his grievance against employer defendant. Second, the interests of the named and unnamed parties were not similar. The two parties are separate entities in sometimes adversarial roles. The EEOC would not have been able

to achieve a voluntary resolution of plaintiff's complaint against the union without including the union at the table. See Vital v. Interfaith Med. Ctr., 168 F.3d 615, 620 (2d Cir. 1999) (finding employer defendants and union defendants "sufficiently dissimilar that [the union's] participation would be necessary to voluntary conciliation."). Third, the union's absence from the EEOC proceedings did prejudice the interests of that unnamed party. Since it was unnamed in the EEOC action, union defendant was not afforded the opportunity to present facts to defend itself against a charge of discrimination. Fourth, nothing in the record suggests that union defendant conveyed to plaintiff that plaintiff's relationship to union defendant should be conducted only through the employer. Plaintiff's EEOC charge against employer defendants therefore failed to exhaust his administrative remedies with respect to union defendant.

Beyond the procedural barrier to plaintiff's action, this court also finds a complete lack of substantive merit in his claim against union defendant. Similar to his claim against employer defendants, plaintiff has brought forward no facts to support a finding of discrimination on the part of the union defendant. To defeat a motion for summary judgment, a party may not rest on its allegations but "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Plaintiff has failed to do so. Thus, summary judgment must be granted.

## DUTY OF FAIR REPRESENTATION/BREACH OF CONTRACT CLAIM

A claim for a breach of the duty of fair representation against a union defendant, inextricably linked to a breach-of-contract claim against an employer, is a "hybrid claim" under § 301 of the Labor Management Relations Act. 29 U.S.C. § 185 *et seq*. A § 301 hybrid claim must be filed within six months of a union's failure in representation. Id. at 155 (applying 29 U.S.C. § 160(b)). This statute of limitations accrues from the time when the

union member "knew or reasonably should have known" that the union had breached its duty. Santos v. Dist. Council of N.Y. City, 619 F.2d 963, 969 (2d Cir. 1980). Suits filed after this six-month limit are time-barred, even if the union has been unresponsive to the plaintiff or the plaintiff holds out hopes for future representation. Cohen v. Flushing Hosp. & Med. Ctr., Local 1199, 68 F.3d 64, 68 (2d Cir. 1995). The statute is not tolled by a plaintiff's filing charges with the NLRB. See, e.g., Kavowras v. N.Y. Times Co., 328 F.3d 50, 55 (2d Cir. 2003); Mazlish v. Branch 36 Nat'l Ass'n of Letter Carriers AFL-CIO, No. 04 Civ. 3943 2005 U.S. Dist. LEXIS 10002, *17 n.4 (S.D.N.Y. May 26, 2005) ("Quite the contrary; oftentimes, the filing of an NLRB charge commences the statute of limitations."). In the instant case, the union notified plaintiff in a letter dated April 21, 2003, that it would not proceed with his grievance. Plaintiff had already filed a charge with the NLRB nearly a month before, on March 25, 2003. See Kavowras, 328 F.3d at 55 (holding that plaintiff's claim accrued, at the latest, on the date of his NLRB charge). Thus plaintiff's claim is time-barred. Even if this court were to toll the six-month time limit to allow for the full appeals process of the NLRB, plaintiff still failed to timely file. The NLRB denied his appeal on August 25, 2003. Plaintiff's civil claim was initiated more than nine months after the denial of his appeal and, therefore well beyond the six-month limit.

Had plaintiff's claim against the union been timely filed, it would still fail for lack of substantive merit. A union breaches its duty of fair representation only when its conduct is "arbitrary, discriminatory or in bad faith." Barr v. United Parcel Service, Inc., 868 F.2d 36, 45 (2d Cir. 1989) (quoting Vaca v. Sipes, 386 U.S. 171, 190 (1967)). Plaintiff states only that, over the course of one week following his reinstatement, the union office did not return his phone calls. (Compl. narrative 5, 6). During the previous week, plaintiff reported having had

14

at least two conversations with union representatives, who agreed to intercede with the company on his behalf and advised him to return to work (Compl. narrative 4). Plaintiff fails to demonstrate bad faith or, as noted above, discrimination on the part of the union. The record also shows that union defendant was not arbitrary in its actions. The union had successfully supported plaintiff at his February 11, 2003 arbitration, Seacrest Linen, but declined to pursue his new complaint for lack of merit.

Although "a union may not arbitrarily ignore a meritorious grievance or process it in a perfunctory fashion," Vaca, 386 U.S. at 191, a union member also does not have "an absolute right to have his or her grievance taken to arbitration." Id. The U.S. Supreme Court observed that such a right would harm the collective interests of organized laborers by overburdening the arbitration system and undermining employer confidence in a union's authority. Instead, "a union must, in good faith and in a nonarbitrary manner, make decisions as to the merits of particular grievances." Id. at 194. Union decisions are granted considerable deference and are considered arbitrary only if "in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a 'wide range of reasonableness' as to be irrational." Air Line Pilots Ass'n v. O'Neill, 499 U.S. 65, 67 (1991) (quoting Ford Motor Co. v. Huffman, 345 U.S. 330, 338 (1953).

Here, the union noted a legal landscape that included plaintiff's earlier suspension for attendance violations and the strong warning of the arbitration award. Union defendant also noted such facts as the plaintiff's new violation of the company attendance policy and the three-week delay between that event and his final termination. The union's determination that plaintiff's grievance had no merit and was "un-winnable" in arbitration (Arroyo Letter, April 21, 2003) was upheld by the National Labor Relations Board at the regional and national

15

levels. It cannot be said to have been "irrational," and therefore it was not arbitrary or capricious. Plaintiff's claim against union defendant is both untimely and without merit.

## **CONCLUSION**

Defendants' motions for summary judgment are granted. This case is dismissed in its entirety.

Dated: New York, New York
       August 2, 2006

SO ORDERED:

*George B. Daniels*

GEORGE B. DANIELS
United States District Judge